Good morning, and may it please the Court, my name is Jonathan Weiss, and I represent Plaintiff Appellant Li Yulin. I'm going to endeavor to reserve two minutes, and I will watch the clock. What we have today is a case about resolving conflicting authority, and there's a number of different ways to approach it, but I think every way results in finding that the District Court did indeed have jurisdiction over Mr. Li's claim. We can start with Cheng, a 2003 decision of this Court. Cheng and Mr. Li's claims are very analogous. One of the plaintiffs in Cheng, Mr. Chiang, had his I-829 denied. He filed a complaint in District Court under the Administrative Procedures Act, just like Mr. Li, and the government, just like the government here, objected for lack of subject matter jurisdiction. We have a 2003 decision of this Court rejecting that argument. They look through the INA. They don't see a mandatory nexus between the denial of an I-829 petition and removal in the INA, and they say, under that, the District Court has jurisdiction. Many years later, we have J-E-F-M, J-E-F-M. Cheng didn't address the jurisdiction stripping provisions, did he? Cheng did not cite B-9. That's correct, but I don't think that magic word is necessary. I think if you look at the arguments of the government described in Cheng, you see the argument that Mr. Chiang's case first needs to be presented to the immigration judge and removal proceedings, and then to the BIA, and then to the Ninth Circuit through the INA, and then the caption of that section of the opinion is called subject matter jurisdiction to renew over the I-829, right? I think what we have in Cheng is a holding that describes the facts in this case. Now, J-E-F-M is also a three-judge panel decision of this Court, and it can't overturn Cheng, so to the extent J-E-F-M has this broad language about B-9 being vice-like in its grip and swallowing up anything even remotely related to removal, if it's in tension with Cheng, we have to go with Cheng. The first case that describes our particular situation must have precedent, otherwise we're to overturn the work of another three-judge panel. Another way to look at J-E-F-M is to look at it from the perspective of subsequent Supreme Court cases. We have in J-E-F-M this broad language about the scope of B-9, and then we have in Jennings, Justice Alito saying, we eschew an uncritically literal view of the phrase arise from in B-9 and then we have in Regents building on what they meant by eschewing it. We have the decision to seek removal, the process by which removal is decided, an order of removal. Those are the types of actions that fall under B-9. And in Regents, we had the Supreme Court confronting aliens who were before the court, not just the Regents of the University of California, but actual DACA recipients who were beneficiaries of a policy of forbearance of removal. And so the only thing standing between them and removal was the forbearance, the policy. So if the decision to remove their forbearance from removal is not closely enough connected to removal proceedings to trigger B-9, then I don't see how the denial of an I-829 can be distinguished from that. What would have had to happen? So your clients are removable based on the USCIS decision as it stands. Would they have had to quickly issue an NTA in order to get jurisdiction in the immigration courts as opposed to jurisdiction in the federal district courts? So because the I-829, you know, the EB-5 program has this conditional residence component to it, which is a little bit unique in the Immigration Code, two-step process, similar to certain marriage cases as well. And because you're harming somebody, you're taking, if you look at the regulations, you 16.62. The decision becomes effective, right? The alien loses their permanent residence status at the time the I-829 is denied. So because of that harm that's unique in this context, the alien has, you know, a number of options available to him. The alien could choose to take his chances in immigration court if that happens, or the alien could choose to avail himself of district court. I understand the concern of the lack of judicial efficiency to have these two tracks, but, you know, the jurisdictional statutes don't say maximize judicial efficiency, right? They say, under certain circumstances, we can take away someone's right to challenge government action in district court. The presumptions are that we have to very narrowly. But, counsel, you make a point that you filed suit before they issued the NTA. Is that crucial or final? That is, there is no technical reason they shouldn't have stapled the NTA to the denial of the 829. And I suppose if they recognized your argument, perhaps they would have. Does that make a difference, or is that just kind of an equitable point you're making? It makes a difference because it's why the government's position is a little bit unreasonable in this case, because it allows for that sort of gamesmanship, where they could... Well, but it's also gamesmanship. Presumably you really should have filed suit on day two, not on day 25. It makes it turn on a race to the courthouse, doesn't it? I don't think there is a race to the courthouse, because even if they beat us to the courthouse, we would still have, I believe, jurisdiction in the district court. Okay. I accept that answer. But when we go to the... I'm sorry. Well, I want to follow on your question. Okay. The two tracks is the question I want... Right. Right. And so could the government still file its NTA? Yes. The government did file an NTA in this case, after we filed our... Has anything happened with respect to that yet? Is a hearing scheduled? So an initial... This is outside the record, but I do represent Mr. Lee in the removal proceedings. So if you'd like, I could let you know what's happening. There was an initial... It was called a master calendar hearing, which is a scheduling hearing that was scheduled. We attended that. The government was not prepared to proceed at that time, so it was continued to October. But so let's suppose that the two tracks continue. And let's suppose that we agree with you. The district court considers it. And on a certain date, it says, you should have granted the 829. And the day before or the day after, the IJ and the BIA say, you should be removed. Is there preclusion? Is there... Do you serve the district court opinion on the BIA? Or vice versa, if they decide he's removable, do they serve that on the district court and say, it's all done? Well, the BIA and the district court look at different things. In front of the BIA, we cannot make an argument that the regulations are ultraviores. And that is sort of the key argument here. So we know that the immigration court proceedings will almost certainly result in a notice of removal. And we'll be here before you at that time making our ultraviores argument, without the benefit of the type of briefing that can be developed in the district court. Not an ultraviores argument, but as a... I mean, maybe this is your case as one-off, but wouldn't you be able in the IJ hearing to say, you know, they were just wrong. I really did make the 10 jobs. Or is ultraviores the only argument that you could make before the IJ? No, we could make the argument before the IJ that we don't, you know, that the... Well, actually, we don't make the argument. The government has the burden of establishing that the I-829 was properly denied. But you could refute that and defeat it in principle, right? Yes. You're a good lawyer. Well, I appreciate that. If you put that in a written opinion, that would be great. Let me ask you, but there's also a third way, right, that you could be challenged. You could have filed an administrative appeal. No, there's no administrative appeal to an I-829 denial. I thought there was a right to administrative review. The right to administrative review is solely through the removal proceedings. There are some immigration benefits where you can file an appeal with what's called the Administrative Appeals Office. I-829 is not on that list. There is no appeal. I think that's in D-2. There's just... And there's no removal proceedings either. If you look at the statute, and I think... I wanted to get back to what Judge Boggs was talking about a little bit earlier. If you look at the... Does it matter who filed what when? It's sort of an extreme thing to allow a party to manipulate their own jurisdiction by seeing how a case is developing. If they don't like how it's going, if they think they're facing good counsel, they file this NTA, right? They strip the court of jurisdiction. This is similar to the Kakana case from the Supreme Court. If we thought that Congress wanted to give this power to a litigant to manipulate the jurisdiction over their own case unilaterally, depending on how they think things are going in the district court, we would have expected to see that, and we don't. I have three minutes left. I'm sorry. Just to follow up on... I think it was one of Judge Boggs' questions. If the district court, for example, found that the I-829 petition was wrongly denied, what effect does that have, and does that revive the LPR status? It comes back to life. How do you see that? The relief that we are seeking in the complaint is an order, an injunction of the district court to order the USCIS to approve the I-829. Once the USCIS approves the I-829, there would be no basis for removal. Then we would be able to file something in immigration court to that extent. I'd like to try to reserve the rest of my time, if possible. If this case had proceeded in the district court, if it had found you in jurisdiction, would you be litigating the question of how many employees you hired? The primary argument would be the ultra-buyers issue. I would say that we would also make a point that the decision of the USCIS fails to meet the minimum requirements under the APA to respond to the arguments presented to them. The I-829 decision says things about the record that just aren't true. For that basis alone, regardless of the merits, it would need to be remanded for a better decision, so we would probably make that argument as well. But the crux of it would be the ultra-buyers argument. All right. Thank you, counsel. Thank you. You can reserve the rest of your time. Your Honor, may it please the Court? Aaron Goldsmith on behalf of the government. The district court properly dismissed this action for that subject matter jurisdiction because 8 U.S.C. 1252b9 channels plaintiff's claims through the petition for review process. I have a couple arguments, but I'd like to get into something that Judge Boggs was asking about, about why don't you just staple the NTA and about this whole contention of manipulating jurisdiction. What the denial says is, and this was both Mr. Lee's denial and just denials generally, is you have 33 days to file a motion to reopen or reconsider. That is, if you have additional evidence, you can present that to USCIS. So I think that was the confusion about the administrative appeal. What you have a right to do is to tell them, the agency tells petitioners, you can file this motion to reconsider within 33 days. The agency does not issue an NTA as a matter of practice within those 33 days because it wouldn't make sense to tell on one breath, you can file this motion to reopen and then immediately serve an NTA. So this lawsuit was filed within that 33-day period. So we're not manipulating the jurisdiction. We have a regulation that says you must serve an NTA. We have a practice of waiting at least 33 days, and that's what happened here. Now, there was some discussion of JFM, and I think the district court relied heavily on JFM. Both parties discussed JFM in their briefing. But it's important to keep in mind that JEFM is not a one-off case. It builds on precedent of this court, particularly the Martinez case and the Singh case, in which this court has drawn a distinction between, on the one hand, claims that are independent of the removal proceedings, which are not channeled under B-9, and others that are intertwined with and basically duplicative of claims being litigated in the removal proceeding. Can you explain why this particular action is part of, as the Supreme Court said in Regents, part of the process by which removability will be determined? Well, simply that if you look at page 9 in the excerpt of record, the NTA, it says we are issuing this NTA because your I-829 was denied. And that is the issue that's going to be reviewed. There was a hearing before the IJ, the immigration judge, on October 19th. And one of the issues is, you know, was this I-829, this petition to remove conditions, proper? So it's a step in the process. Is that enough? So it's a step in the chain because the NTA then has its own process, and the removal hearing has its own process. Obviously, if the I-829 is denied, then the LPR status ends. But does that make it part of the process by which removability is determined, which is the standard the Supreme Court gave us? Well, it's a little bit more than that. There's a regulation that requires, once the I-829 is issued, that the agency follow up by issuing an NTA and placing the individual in removal. Opposing counsel, it's Kukana suggesting that we shouldn't look at a regulation to make jurisdictional determinations. I understand that point, but here we have a statute, 1252b9, and that's the statute that channels this through the petition for review process. So it's not a regulation that is depriving. It is a statute. And the point is it doesn't make sense to have the same issue being litigated both in district court and before an immigration judge. Well, why not? I mean, we know, for example, that it sometimes takes the agency a very long time to get around to doing an NTA, to going through removal proceedings. I mean, we've been hearing about years and years of backlog on the part of the government and all this. Why not, if there's a separate action to contest the regulation or the final agency action in this case, let it get to district court and be decided? Why couldn't Congress have thought of that? I mean, and separately, it seems as though the Supreme Court has spoken to this issue of what a final order of removal is for purposes of B-5. So our view is that Congress has set up this system for review of issues being decided by immigration judge, appealed to the BIA, and subsequently petitioned for review, that under B-9, a litigant can't bypass that process and proceed in district court, that that was a policy determination that Congress made, either for better or for worse. That's what they spoke to. And then I would also add that there's the separate issue of, as I mentioned, JFM builds on other cases, Martinez, Singh, in which they ask, really, is the issue we're talking about independent of the removal proceedings? And there's no argument here that it's independent of removal proceedings. If you look at the complaint, one of the issues that they're seeking to challenge in the paragraphs 35 and 36, it is that even under the regulation, they satisfied all the requirements and that the I-829 was improper for the agency to deny it. So the question of whether the I-829 was properly denied by the agency would be the same issue before the immigration judge and— So I guess to be more specific, the denial of the I-829, is that an action taken or a proceeding brought to remove an alien? It is an action taken because it results in the commencement of a removal proceeding. But the statute doesn't say that. That was my confusion. The statute just says if it's denied, then you lose LPR status. It doesn't say the agency shall commence removal proceedings. In fact, the agency doesn't necessarily have to commence removal proceedings. It might not even do so. It is required to commence removal proceedings under its regulations. But the regulations are at the discretion of the agency. It's not a statutory command. You're correct. It's not a statutory command, but it is, at least since the United States v. Nixon, the regulations are binding on the agency, and this court has recognized that you could even file an action to compel agency action under 706A1 of the APA if an agency is not complying with its own regulations. Who would have standing to bring such an action? Mr. Lee. Now, he might not want to. I was going to say, would somebody else, an anti-immigration group, say you're letting these rich scamsters stay in the U.S. and we want you to? Would they have standing to do that? Probably not, Your Honor. Let me ask you this. There's reference to this statute that was just passed, the EB-5 Reform Act. Will that resolve this problem that there will be no case like this arising in the future because that act unquestionably would channel everything through the procedure? I don't think so. You say you do or don't? I don't think so. You don't think so? I would. I see that my time is running down. I would mention there's an alternative basis for dismissal that was not directly expounded upon by the district court, and that is the lack of finality. And there's the jurisdiction of this court, this precedent of CABACANG, in which once you have removal proceedings, and here there's no question that removal proceedings exist, USCIS's denial could be completely wiped out by a decision of the immigration judge. They didn't exist at the time the lawsuit was filed. That's correct. So there is a question whether they existed at the time of the lawsuit. Well, but I think this gets into the point that Judge Boggs was making about the race to the courthouse. Whether in CABACANG the removal proceedings were commenced, and, again, it was not an EB-5 case. They were commenced after the district court decision while the matter was on appeal. So I think the issue really is, once there are removal proceedings, then there's no final agency action. Whether the lawsuit was filed first or not is really the issue. Isn't the final agency action the denial of the I-829? I mean, we have that from Chang. I don't see how CABACANG could change that. Well, I mean, Chang says the denial of an I-829 petition is a final agency action. Now, although CABACANG's reasoning suggests that was wrong, but CABACANG dealt with the adjustment of status, not with the I-829 petition. So I don't see how that could affect our analysis of finality here. Well, I think CABACANG speaks directly towards finality in a way that Chang does not, which talks about exhaustion and the case of Darby, that exhaustion, you know, you can't require someone to exhaust their administrative remedies unless there's a statute that requires it. But that's really an exhaustion question. That's not a B-9 or a finality issue. So we don't see Chang as dispositive for that reason. From what you said, I just want to be clear that because of this 33-day reopening period, and maybe they counted the same 33 days, a petitioner or an alien in Mr. Lee's position would always be able to get in ahead of you by suing within that 33 days because you're not going to issue a notice to appear while the person has that opportunity. I think that's correct, Your Honor. Could you tell me, just as a practical matter, if the district court that reviews the denial of the I-829 petition, and rather than take opposing counsel's urging to order the USCIS to grant it, it just says the denial was arbitrary and capricious, send it back to the USCIS to review it again. And then what happens if the NTA is proceeding, the removal proceedings are going forward? How would that work out as a practical matter? Your Honor, I don't know. And one of the reasons we don't believe you can have these two parallel tracks are because of those types of situations. It's unclear what would happen, whether you would continue to have the agency look at the I-829 again while the issue is potentially still being reviewed by the immigration judge. I'm just not sure how that would play out as a practical matter. Well, I heard your adversary at least say, and I asked him on rebuttal, and what I heard him say was, we want an injunction to order the granting of the 829. And I thought, ipso facto, the removal proceedings have to go away. Well, that certainly is the position. If there's a decision in the federal court that they would then point that out to the immigration judge and say that's the end of the matter. Now, the problem with that is that— There's a difference between pointing out something and it being a matter of law. That is, they could point it out and the IJ could still order removal, and then we would have litigation against that saying, well, what's the force of the district court decision? Right, and I'm not sure. I mean, that's the problem with having two tracks of litigation that are on collision course, potentially collision. Has this never happened before? Has no alien who was denied an I-829 never filed an action in district court before? Another way of asking that is, are there any other cases on point? No, I don't think so, other than we cited, I think, two other I-829 cases where, you know, they were unpublished district court cases where there was—the court found that B-9 precluded a review. Was that pre-Jennings and Regents? No, at least one of them was subsequent and explained why we don't think—we think it's distinguishable. I mean, even before Jennings—and I see that my time is running down. Jennings dealt with bond hearings, detention. Very clear what Jennings dealt with. I know, Your Honor. But before—even before Jennings, this court in JFM and other cases made clear that detention is something that is independent of the removal proceedings. So it's not—that B-9 wouldn't preclude those kinds of claims even before Jennings. So it's not that Jennings was in tension with JFM on that point. They are consistent on that issue. But Regents is closer, don't you think? Because Regents was—but for DACA, these non-citizens would otherwise be subject to removal. Well, except that Regents, how they described the DACA policy was a little bit different. They said it does not constitute a particular enforcement action. And it is—and the policy— It was a deference of an enforcement action. They said it's not simply a non-enforcement policy. And that was part and parcel of its analysis— Oh, because it gave the other benefits, right? —of 701A. And regardless of whether that's correct, that's how it viewed it for jurisdictional grounds. And if you look at the Regents' decision— You could analogize Mr. Lee's position similarly, right? He's come here. He's established a business. He has some reliance interests. He's making money. I mean, there's a lot of other—a host of other things besides just can you be in the country or not. But the key part in Regents was there was no enforcement action, and here there is an enforcement action. Post hoc enforcement action. Correct. It's very interesting. Well, and I would just say one other thing about— Sum up. Why don't you sum up? Because you're over your time. I would—I see my time has expired. I would just say that we would ask that you affirm the decision of the district court on 1282B9 or in the alternative for lack of finality. Thank you, Your Honor. Thank you so much. Mr. Weiss? And could you address the question that I put to him? Did I understand you correctly to say you want an injunction to order the grant of an 829 and that therefore they would have to drop the removal action? So to start with that, yes. We want an order for the USCIS, so that's not EOIR, right? They don't conduct the removal proceedings. We want an order for USCIS, that's the agency that denied the I-829, to approve it. But what if the district court doesn't issue an injunction and merely says the USCIS's denial was arbitrary and capricious and sends it back for further review? I mean, that's a more likely outcome. Then what happens? So if that happens and there's no denied I-829 because the I-829 is reopened, and that would also eliminate any basis for the removal proceedings. So either course of action would eliminate the removal proceedings. And if the IJ is considering the 1186B challenge to the denial of the I-829, how is that affected by the district court's determination that USCIS was arbitrary and capricious? So that's review of a – I mean, that's relief from removal. So before you get to the stage of relief from removal, you have to determine removability. And so when there's no I-829 denial, either because the agency has been ordered to approve it or because it's been remanded to the agency for further proceedings, you don't have any grounds of removability. All you have is someone with a clean criminal record and a green card who there's no basis for removal proceedings against, and I think it would be a very straightforward termination of removal proceedings. In that case, I did want to touch briefly on CABACOM. I think we have a sentence from Chang that's dispositive on that. They even cite the part of the APA that deals with finality by statute section, you know, 5 U.S.C. 704. I also wanted to talk about this, the motion to reopen. So I don't know USCIS's internal policies. I can tell you that I have received notices to appear attached to denial notices, not of I-829s but of other applications without reference to the 33, you know, without waiting for the 33 days to pass. I can also say that because the harm of losing your green card status happens, you know, at the stage of I-829 denial, my client, you know, has the jurisdictional, you know, has the rights to challenge that. Now, he may also be able to collaterally attack that if when he gets thrown into this bottomless pit of removal proceedings. That doesn't change the fact that he can proactively use his rights to defend himself, the fact that he may have a collateral attack in the future. And to the extent it creates a problem, I think those are a little bit overstated, just because there's a few of these I-829s. There's even fewer denials. There's a pretty high approval rate on them. And if there is some problem with duplicity, you know, with too much with these two tracks going on, you know, I hate to say it, but it's just it's not my client's problem, really. With respect to the two tracks, did you have any view on the new EB-5 law? I don't think that eliminates the problem, because I think that in my 28-J letter, the point I was trying to make was that there are specific, with respect to the I-526, the first step in the EB-5 process, there are specific jurisdiction stripping elements in there, and they didn't add, there's no analog in the I-829, right? So I think even under the new law, someone in this situation would still have the full right to go to district court. You know, challenging an I-526 denial would be different. I think I'm over time, but happy to answer any further questions. Any further questions? Okay. At my first reading, I had a different view of the EB-5, the new law, so I'll have to go back and read it more thoroughly. Okay. Thank you. Thank you. All right. Thank you very much, Counsel Lee, versus USCIS is submitted, and the session of the court is adjourned for today. Thank you. All rise. This court for this session stands adjourned.
judges: Boggs, WARDLAW, IKUTA